```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

Jennifer L. Weekley,              :

      Plaintiff,               :

   v.                              :     Case No.  2:14-cv-2051

                                 :     JUDGE MICHAEL H. WATSON
Commissioner of Social Security,        Magistrate Judge Kemp

      Defendant.                :

## REPORT AND RECOMMENDATION

### I.  Introduction

    Plaintiff, Jennifer L. Weekley, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.  Those applications were filed on April 5, 2011, and alleged that Plaintiff became disabled on September 30, 2004.

    After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on May 29, 2013.  In a decision dated June 11, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on August 28, 2014, when the Appeals Council denied review.

    After Plaintiff filed this case, the Commissioner filed the administrative record on December 29, 2014.  Plaintiff filed her statement of specific errors on January 29, 2015, to which the Commissioner responded on May 6, 2015.  Plaintiff filed a reply brief on May 26, 2015, and the case is now ready to decide.

### II.  The Lay Testimony at the Administrative Hearing

    Plaintiff, who was 31 years old at the time of the administrative hearing and who has a high school education, testified as follows.  Her testimony appears at pages 40-55 of

the administrative record.

Plaintiff first testified that she lived in a trailer with her family, which included three children, all ten or younger. She was able to do some housework and cared for the children with the help of other family members. She drove to a doctor's appointment once a month, and her husband did the shopping. Plaintiff said that she lived next door to her mother-in-law, who helped with child care.

Plaintiff had been diagnosed with fibromyalgia in 2008. In a normal day, she cared for her four-year-old daughter. She did some laundry and vacuuming. Everything was painful; she had constant arm and leg pain as well as upper back pain. If she did some cleaning, the next day she would be in pain. On a good day she could also prepare dinner.

For pain relief, Plaintiff used heating pads, took warm showers, and used an analgesic like Ben-Gay. She had to lie down five or six hours total in a day. She was able to sit through a church service. However, she had trouble lifting more than an armful of dry clothes. She could stand and walk for an hour. She had about seven good days in a month. She felt stressed, tired, sad, hopeless, and helpless. Lexapro helped her mood.

### III.  The Medical Records

The medical records in this case are found beginning on page 305 of the administrative record. The Court will summarize those records, as well as the opinions of the state agency reviewers, to the extent that they are pertinent to Plaintiff's statements of error, which focus on fibromyalgia rather than any psychological impairments.

The records demonstrate a long history of treatment for fibromyalgia or fibromyalgia-like symptoms. As Plaintiff testified, she was diagnosed with fibromyalgia in February, 2008. She discontinued treatment while carrying and then breast-feeding

her child.  She had reported pain in her arms, legs, and back in 2007 which were assessed as "myalgias, arms and legs, etiology undetermined."  She was told to see a rheumatologist but could not do so due to lack of insurance.  In a note dated April 27, 2009, Dr. Presutti started her on Lyrica and Trazodone (to help her sleep) and recommended a return visit in 4-6 weeks.  (Tr. 305-17).

Dr. Brown performed a consultative physical examination as reflected in a report dated August 11, 2011.  Plaintiff told Dr. Brown that the diagnosis of fibromyalgia had been made in 2002.  She described pain in the arms, legs, and back, and muscle spasms and cramping in her hands.  She was symptomatic six days out of seven.  Medications were not very helpful.  She was able to walk, sit, and stand comfortably during the examination.  The only positive finding was multiple tender points over the occiput, posterior thorax, hips, and knees, consistent with fibromyalgia.  Dr. Brown concluded that Plaintiff's ability to perform work-related activities was at least mildly impaired.  (Tr. 329-33).

Plaintiff began a treating relationship with Dr. England at the Holzer Clinic in 2011.  She told Dr. England that she had pain in her legs and insomnia, and that her condition had gotten progressively worse since 2008.  At that point, she was taking no medication.  She had pain in 18 of 18 trigger points.  Dr. England prescribed some medications and diagnosed both fibromyalgia and depression.  (Tr. 339-40).  She was about the same when seen a year later, reporting stiffness in the morning in excess of one hour.  Other recheck visits were similar.  At a return visit in 2013, Plaintiff reported some weight gain due to her medication.  She again had pain in all 18 trigger points.  (Tr. 346-48).

Dr. England referred Plaintiff to Dr. Black, who saw her on May 3, 2013.  Plaintiff also told Dr. Black that nothing had

seemed to help her pain in the past. All of her lab results were normal. Her reported symptoms included unexplained weight gain, night fever and sweats, difficulty sleeping, anxiety, depression, and stress. She also had recurrent belly pain and associated symptoms as well as joint stiffness, aches, and pains. Plaintiff reported being able to stand for half an hour, sit for four hours, lift 50 pounds, and walk up to 100 yards. She was tearful during the examination. Her range of motion was full and sensation, reflexes, and motor power were all normal. Dr. Black did not detect any trigger points but she was tender all over. Dr. Black doubted the diagnosis of fibromyalgia and thought Plaintiff was suffering from chronic fatigue syndrome with myalgia. He thought she had significant depression and probably had sleep apnea. He recommended, among other things, a psychological evaluation and a sleep study. He noted that the symptoms outweighed any clinical findings and that it was reasonable to search for a more in-depth diagnosis. (Tr. 597-98).

Plaintiff's records were reviewed by two state agency physicians. The first, Dr. McCloud, stated on September 9, 2011, that Plaintiff could do a full range of medium work limited only by some environmental restrictions. (Tr. 77-78). The second, Dr. Green, concurred. (Tr. 91-92). Neither provided any explanation for these conclusions.

### IV. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 18-30 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirement of the Social Security Act through June 30, 2010. Next, he found that she had not engaged in substantial gainful activity since her alleged onset date of

September 30, 2004.

Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including obesity and fibromyalgia. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the medium exertional level but that she had to avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity.

The ALJ next considered the applicable section of the Medical-Vocational Guidelines. Under Rule 203.28, someone with Plaintiff's characteristics would not be disabled if the person could perform medium work. The ALJ determined that the restriction to exposure to extremes of temperature, humidity, and wetness had little or no effect on the occupational base of unskilled medium work. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

    V. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises two issues. She asserts that (1) the ALJ's credibility analysis was deficient, especially in light of the diagnosis of fibromyalgia; and (2) the ALJ erred in his treatment of the limitations caused by Plaintiff's non-severe impairments. Her brief does not address the second claim, however, so it will not be discussed here. The issues raised in her first claim are considered under the following legal standard.

<u>Standard of Review</u>. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial

-5-

evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The Credibility Finding

In her first statement of error, Plaintiff contends that the ALJ failed to follow the dictates of Social Security Rulings (SSR) 96-7p and 12-2p, which deal, respectively, with the general subject of judging a claimant's credibility and the more specific subject of evaluating a claim of disability based on fibromyalgia.  She asserts that the ALJ improperly based his decision solely on the lack of objective medical evidence to support her claim as to the severity of her fibromyalgia, and that he did not take into account other factors which are made relevant by the two rulings in question.

SSR 12-2p describes fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."  The analysis of fibromyalgia as a potentially disabling condition is not, at least at a general level, substantially different from the analysis of other conditions which can, but do not always, cause debilitating pain or fatigue.  First, the ALJ must decide if there is documentation of a physical condition which can cause the claimant's symptoms.  See 20 C.F.R. §404.1529(a).  If so, the ALJ must then decide how severe the symptoms are and to what extent they impact the claimant's ability to work.  Id.

In making this latter determination, an ALJ is to be guided by, inter alia, certain factors described in SSR 96-7p, which tells the ALJ that "the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities.  This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."  That ruling also cautions that

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.  An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

These same concepts are reinforced in SSR 12-2p, which places special emphasis on their value in fibromyalgia cases precisely

because of the limited usefulness of objective medical testing in determining the functional impact of that condition.  SSR 12-2p says, in pertinent part, that "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms."

Did the ALJ do that here?  Plaintiff says no; the Commissioner contends otherwise.  In order to answer that question, the ALJ's decision and rationale must be reviewed in some detail.

The ALJ did find that Plaintiff had impairments which could reasonably be expected to cause her alleged symptoms.  (Tr. 23). On the question of whether her statements about the intensity, persistence, and disabling effects of those symptoms were credible, however, he found against her.  In reaching that conclusion, he first summarized the extensive treatment records dating back to 2004, including records documenting the diagnosis of fibromyalgia as early as 2008 and her report of myalgia-like symptoms from 2007 forward.  Those records also documented obesity; for example, in 2011, Plaintiff's Body Mass Index was 38.98.  (Tr. 23-26).

After that review, the ALJ observed that "[e]ven when considering the impact of obesity, the evidence reveals that the claimant has minimal objective findings and is capable of performing medium exertion ...."  (Tr. 26).  The ALJ bolstered that observation by referring to the treatment notes which, in his view, did not show severe tenderness and which revealed

-8-

normal gait and range of motion as well as a course of treatment which was conservative and effective "when considering her objective findings rather than her subjective complaints." Id. The balance of the discussion of her impairments is directed toward psychological, rather than physical, conditions.

The ALJ did acknowledge that there were some non-medical reports about Plaintiff's symptoms. He discounted statements made by her mother-in-law on the basis that they "were contradictory to the findings in treatment notes and the claimant's extensive activities as noted." (Tr. 27-28). The ALJ then reviewed and adopted the findings of the state agency reviewers as consistent with the objective medical findings. (Tr. 29).

Almost all of the discussion which the ALJ devoted to the limiting effect of Plaintiff's fibromyalgia focused on the absence of objective medical evidence and the lack of aggressive treatment. Since those are the earmarks of fibromyalgia and do not address its severity, that focus was clearly improper. As this Court observed in a similar case, see Lucas v. Comm'r of Social Security, 2014 WL 4065608, *8 (S.D. Ohio Aug. 14, 2014), "insofar as the [ALJ] relied on negative test results and clinical findings to discount plaintiff's subjective complaints related to her fibromyalgia, the [ALJ] demonstrated a fundamental misunderstanding of the disease. The [ALJ] failed to recognize that objective tests are of little relevance in determining the existence or severity of fibromyalgia, which cannot be confirmed by objective finding," citing, inter alia, Rogers v. Comm'r of Social Security, 486 F.3d 234, 245 (6th Cir. 2007).

The ALJ did make one passing reference in his evaluation of Plaintiff's fibromyalgia to her "extensive activities." That list of activities, drawn from Exhibit 6E (found at Tr. 258-65), was discussed primarily in the context of the evidence concerning any psychologically-based limitations. (Tr. 27). To the extent

-9-

that the ALJ also considered those activities as evidence of an ability to do medium work, that conclusion is not supported by substantial evidence. On the form in question, Plaintiff reported that she was "in pain daily and cannot work to support my family." She said she got one child up and off to school but then went back to bed until two other children got up. She could care for them "while taking breaks in between sitting in a chair." She also cared for animals but had help from her husband. Her pain affected her sleep. She could prepare simple meals but it might take one or two hours to do so. Doing cleaning or laundry took her all day and, again, her husband helped with these chores. She said that "over activity makes pain worse" and that she went out alone only when absolutely necessary, shopping only once or twice per month. She rarely engaged in activities she enjoyed, like fishing or hunting, because that simply took too much effort. Lastly, she said she was short-tempered due to pain. While that range of activities might support a finding that she had few, if any, psychological limitations, it (along with Plaintiff's testimony at the hearing and the third-party statements) provides no support for the ALJ's finding that Plaintiff could do a relatively full range of medium work eight hours a day, five days a week. Consequently, for at least the period from 2008 forward, the case requires further consideration of Plaintiff's limitations due to fibromyalgia made in accordance with SSRs 96-7p and 12-2p.

### VI. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained and that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### VII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this

Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

   The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                              /s/ Terence P. Kemp
                              United States Magistrate Judge

-11-